**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Konnie Drake, | No. CV-18-02773-PHX-DLR |
| Petitioner, | **ORDER** |
| v. | |
| Conn's HomePlus, | |
| Defendant. | |

Before the Court is Defendant Conn's Appliances Incorporated's ("Conn's") motion to dismiss or, in the alternative, stay proceedings and compel arbitration. (Doc. 12.) The motion is fully briefed. For the following reasons, Conn's motion is granted in part and denied in part.

**I. Background**

Conn's operates retail stores selling furniture, household appliances, and electric goods. (Doc. 1 ¶¶ 6-7.) Plaintiff Konnie Drake was an employee at Conn's location on East Thomas Road, Phoenix, Arizona from July 2015 to June 2018. (Doc. 24-1 at 2.) Drake filed a complaint against Conn's pursuant to the Civil Rights Act of 1866 and Title VII of the Civil Rights Act of 1964, alleging that he was the victim of racial harassment from his manager and other co-workers; that neither Drake's manager nor human resources were sufficiently responsive to his complaints; and that his manager retaliated against Drake for reporting the racial harassment. (Doc 1 ¶¶ 1, 11-39.) Conn's subsequently

moved to dismiss the action or, in the alternative, stay proceedings and compel arbitration. (Doc. 12.)

Relevant to resolution of the present motion before the Court, Drake signed an acknowledgement form for Conn's Dispute Resolution Plan ("DRP") when he began his employment with Conn's. (Doc. 12-1 at 15.) The DRP requires that, as a condition of employment, any controversy or claim arising during or after employment will be submitted for final and binding arbitration. (*Id.* at 9.) The acknowledgement form that Drake signed provides, "I have received a copy of Conn's Dispute Resolution Plan . . . . I understand that I am agreeing to substitute one dispute resolution form (arbitration) for another (litigation) and that I am, hereby, waiving my right to have covered disputes resolved by a court and/or jury." (*Id.* at 15.) The DRP expressly requires the arbitration of "claims for discrimination []including discrimination based on . . . race . . . [and] claims of retaliation due to exercising statutorily protected rights . . . ." (*Id.* at 9-10.) The DRP also contains a delegation clause that states the DRP "[c]overs any dispute concerning the arbitrability of any controversy or claim." (*Id.* at 9.)

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides that written contracts to arbitrate disputes "shall be valid, irrevocable, and enforceable except upon grounds that exist at common law for the revocation of a contract." 9 U.S.C.A. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (discussing liberal federal policy favoring valid arbitration agreements). In evaluating the validity of an arbitration agreement, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S.C.] § 2." *Ticknor v. Choice Hotels Int'l*, 265 F.3d 931, 936-37 (9th Cir. 2001).

Because of the strong federal policy favoring arbitration agreements, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,

218 (1985). Therefore, this Court's limited role is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "Where a contract contains an arbitration [agreement], courts apply a presumption of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 Fed. App'x. 740, 742 (9th Cir. 2012).

**III. Discussion**

Conn's seeks to compel arbitration pursuant to the provisions of the DRP. Conn's argues that the DRP is a valid agreement and that all issues, including the question of arbitrability, have been delegated to the arbitrator and are thus outside the scope of this Court's review. (Doc. 33 at 2-4.) In response, Drake argues that the DRP is procedurally and substantively unconscionable, that he did not assent to the DRP, and that the DRP's requirements to arbitrate are permissive and not mandatory.

**A. Arbitrability**

"Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Clear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 79-80 (2010). Even if a delegation of arbitrability is clear and unmistakable, it may be found unenforceable if the delegation itself is unconscionable. *Id.* at 71-74.

The Court finds clear and unmistakable evidence that Drake and Conn's expressly agreed to delegate the issue of arbitrability to the arbitrator. Pursuant to the DRP, it "[c]overs any dispute concerning the arbitrability of any such controversy or claim . . . ."

(Doc. 12-1 at 9.) Furthermore, "incorporation of the [American Arbitration Association (AAA)] rules constitutes clear and unmistakable evidence that [the] contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The DRP expressly provides that the arbitration will be conducted according to the rules of the AAA. (Doc. 12-1, at 12, 13.) Such provisions are clear and unmistakable evidence of an express agreement to arbitrate arbitrability.

## B. Unconscionability

Even if the delegation of arbitrability is clear and unmistakable, the provision may be unenforceable if the delegation provision itself is unconscionable. *Rent-A-Ctr.*, 561 U.S. at 71-74. When a court finds that the parties unmistakably delegated the question of arbitrability to the arbitrator, then "the only remaining question is whether the particular agreement to *delegate* arbitrability—the Delegation Provision—is itself unconscionable." *Brennan*, 796 F.3d at 1132 (emphasis in original). However, if the whole agreement is challenged on unconscionability grounds, rather than the delegation provision specifically, "the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator." *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1263-64 (9th Cir. 2006).

Drake's challenge to the DRP is two-fold. First, Drake contends that the entire DRP is procedurally unconscionable. Second, Drake asserts that select provisions are substantively unconscionable.[1] (Doc. 24 at 8-16.) Neither contention specifically challenges the delegation provision as unconscionable. Therefore, the Court must treat the delegation provision as valid and leave any challenge to the whole agreement to the arbitrator, consistent with the delegation provision. *Rent-A-Ctr.*, 561 U.S. at 72; *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991) (finding that the Court's role is "limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator."). Drake's additional challenges

---

[1] Drake challenges the following six provisions as substantively unconscionable: (1) The DRP requirement of confidentiality in the arbitration proceedings; (2) the arbitration venue provision; (3) deadlines within the DRP; (4) the provision allowing Conn's to seek injunctive relief; (5) the provision requiring the use of an internal grievances process before arbitration; and (6) Conn's right to unilaterally modify the DRP.

to the DRP all are merits and defenses that must be decided by the arbitrator.[2] The Court will not consider them at this time.

### C. Stay Proceedings

The FAA provides that when a court is "satisfied that the issue involved in such a suit or proceeding is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C.A. § 3. In applying this provision of the FAA, the Ninth Circuit adopted "a rebuttable presumption that an order compelling arbitration but not explicitly dismissing the underlying claims stays the action as to those claims pending the completion of the arbitration." *Medivas, LLC v. Marubeni Corp.*, 741 F.3d 4, 10 (9th Cir. 2014). Such a presumption "accords with [the Ninth Circuit's] preference for staying an action pending arbitration rather than dismissing it." *Id.* at 9.

Drake argues that the Court should dismiss the claims without prejudice rather than stay the claims "so that an appeal may be taken and the parties can avoid a costly arbitration proceeding . . . if the appeal is successful." (Doc. 24 at 16.) The Court disagrees. Although an appeal might, at least initially, allow the parties to avoid the costs of arbitration proceedings, the parties will be forced into potentially lengthy and expensive appeals proceedings. Expressing a preference for one lengthy and expensive process for another does not rebut the presumption favoring a stay. If it did, every plaintiff seeking to avoid arbitration would raise the same argument and pursue an appeal, undermining the Ninth Circuit's preference for staying claims until after the arbitration is complete. Such a result would be contrary to the federal policy favoring arbitration agreements. Therefore, the Court will compel arbitration without dismissing the underlying claims.

### IV. Conclusion

---

[2] Although Drake challenges whether he assented to the contract, the argument, at its core, is one of procedural unconscionability. In effect, Drake is arguing that there is a lack of ". . . real and voluntary meeting of the minds . . . [and] relative bargaining power . . . ." *Maxwell v. Fidelity Fin. Servs.*, 907 P.2d 51, 59 (Ariz. 1995). Moreover, the contention that there was no assent because he did not read the DRP before signing the acknowledgement form is squarely foreclosed by Arizona law. *Rocz v. Drexel Burnham Lambert, Inc.*, 743 P.2d 971, 975 (Ariz. Ct. App. 1987) ("Parties cannot repudiate their written contracts by asserting that they neglected to read them . . . .").

| | |
|---|---|
| 1 | The Court finds that the parties entered into a valid and enforceable agreement to delegate arbitrability to the arbitrator. The inclusion of an express delegation provision and incorporation of the AAA rules constitutes clear and unmistakable evidence of an agreement to delegate arbitrability. Although Drake contends that the entire DRP is unconscionable, he does not specifically challenge the delegation provision as unconscionable. Therefore, the Court must compel the parties to submit all merits and defenses of arbitrability to the arbitrator. |

The Court finds that the parties entered into a valid and enforceable agreement to delegate arbitrability to the arbitrator. The inclusion of an express delegation provision and incorporation of the AAA rules constitutes clear and unmistakable evidence of an agreement to delegate arbitrability. Although Drake contends that the entire DRP is unconscionable, he does not specifically challenge the delegation provision as unconscionable. Therefore, the Court must compel the parties to submit all merits and defenses of arbitrability to the arbitrator.

In interpreting the FAA, the Ninth Circuit has adopted a presumption to stay proceedings when a court compels arbitration without dismissing the underlying claims. Here, the arbitrator will determine the threshold issue of arbitrability. This Court will stay this matter pending arbitration to retain jurisdiction in the event the arbitrator finds the arbitration provision unenforceable, or to enforce any arbitral award. Accordingly,

**IT IS ORDERED** that Conn's motion (Doc. 12) is **GRANTED in part** and **DENIED in part** as follows: (1) Conn's motion to dismiss is **DENIED**; and (2) Conn's motion to stay proceedings and to compel arbitration is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk is directed to administratively close this case, whereupon, by proper motion of the prevailing party at arbitration, it may be reopened or dismissed with prejudice.

Dated this 20th day of June, 2019.

Douglas L. Rayes
United States District Judge